ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General
STACY LAU (SBN 254507)
JONATHAN A. WIENER (SBN 265006)
MICAELA M. HARMS (SBN 392552)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3743
 Fax:  (415) 703-1107
 E-mail:  Micaela.Harms@doj.ca.gov
*Attorneys for the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, ET AL., | |
| Plaintiffs, | No. 4:26-cv-03500-HSG |
| v. | **STATE AND LOCAL GOVERNMENT PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| LEE ZELDIN, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | Date:   June 25, 2026<br>Time:   2:00 pm<br>Place:  Courtroom 2, 4th Floor |
| Defendant. | Judge:  Honorable Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.    State and Local Government Plaintiffs' Claim Is Ripe ............................................ 1

        A.    The Issues are Fit for Judicial Resolution ..................................................... 1

        B.    Postponing Review Would Impose Immediate, Direct, and Significant Hardship .................................................................................. 4

    II.    Plaintiffs Have Standing ......................................................................................... 6

    III.    EPA's Choice Not to Estimate How Much Time It Needs to Fulfill Its Duty Does Not Meet the Agency's Burden ..................................................................... 8

CONCLUSION ................................................................................................................. 12

**TABLE OF AUTHORITIES**

Page

CASES

*Addington v. U.S. Airline Pilots Ass'n*
    606 F.3d 1174 (9th Cir. 2010) ............................................................................................... 2

*Alaska Ctr. for Env't v. Browner*
    20 F.3d 981 (9th Cir. 1994) ............................................................................................... 8, 9

*Bernstein v. Virgin Am., Inc.*
    365 F. Supp. 3d 980 (N.D. Cal. 2019) ................................................................................. 12

*Bock v. Washington*
    33 F.4th 1139 (9th Cir. 2022) ............................................................................................... 6

*California v. U.S. EPA*
    360 F. Supp. 3d 984 (N.D. Cal. 2018) ................................................................................... 4

*California v. U.S. EPA*
    385 F. Supp. 3d 903 (N.D. Cal. 2019) ............................................................................. 9, 12

*Colwell v. Dept. of Health and Human Servs.*
    558 F.3d 1112 (9th Cir. 2009) ............................................................................................... 1

*Ctr. for Biological Diversity v. Wheeler*
    No. 19-cv-02462-RS, 2019 WL 9464390 (N.D. Cal. Dec. 11, 2019) ................................... 11

*In re Ozone Designation Litig.*
    286 F. Supp. 3d 1082 (N.D. Cal. 2018) ...................................................................... 3, 7, 9, 11

*Kansas v. Garcia*
    589 U.S. 191 (2020) ............................................................................................................. 4

*Kentucky v. EPA*
    No. 24-1050 (D.C. Cir. Nov. 16, 2025) ............................................................................. 4, 5

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ............................................................................................................. 7

*Mexichem Specialty Resins v. EPA*
    787 F.3d 544 (D.C. Cir. 2015) ............................................................................................... 4

*Mississippi Comm'n on Env't Quality v. EPA*
    790 F.3d 138 (D.C. Cir. 2015) ............................................................................................... 7

*Mississippi v. EPA*
    744 F.3d 1334 (D.C. Cir. 2013) ............................................................................................. 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Murray Energy Corp. v. EPA*
   936 F.3d 597 (D.C. Cir. 2019) ................................................................. 3

*Nat. Res. Def. Council v. Train*
   510 F.2d 692 (D.C. Cir. 1974) ................................................................. 12

*National Ass'n for Gun Rights, Inc. v. City of San Jose*
   618 F. Supp. 3d 901 (N.D. Cal. 2022) .................................................... 2

*Ohio v. EPA*
   603 U.S. 279 (2024) ................................................................................. 4

*Publ. Int. Legal Found., Inc. v. Nago*
   174 F.4th 664 (9th Cir. 2026) ............................................................. 1, 4

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*
   968 F.3d 738 (9th Cir. 2020) ................................................................. 1

*Stockton v. Brown*
   152 F.4th 1124 (9th Cir. 2025) .............................................................. 2

*Wolfson v. Brammer*
   616 F.3d 1045 (9th Cir. 2010) ............................................................... 4

**STATUTES**

United States Code, Title 23
   §149(b) ..................................................................................................... 6

United States Code, Title 42
   § 7407(d)(1)(B)(ii) ................................................................................. 10
   § 7407(d)(2)(B) ...................................................................................... 11
   § 7503 ....................................................................................................... 7
   § 7506(c) ................................................................................................... 6
   § 7604(a)(1) .............................................................................................. 6
   § 7604(f)(3) ............................................................................................... 6
   § 7607(d)(7)(B) ........................................................................................ 3

**COURT RULES**

Civil Local Rule 3-4(c) ................................................................................. 12

Federal Rule of Appellate Procedure 28(j) ................................................... 6

State and Local Government Plaintiffs' Reply in Support of Motion for Summary Judgment (4:26-cv-03500-HSG)

## TABLE OF AUTHORITIES
### (continued)

Page

**FEDERAL REGISTERS**

77 Fed. Reg. 30088 (May 21, 2012) ............................................................................ 3

77 Fed. Reg. 30091 (May 21, 2012) ............................................................................ 3

80 Fed. Reg. 2206 (Jan. 15, 2015) ............................................................................. 9

80 Fed. Reg. 2209 (Jan. 15, 2015) ............................................................................. 9

80 Fed. Reg. 2211 (Jan. 15, 2015) ............................................................................. 9

**OTHER AUTHORITIES**

EPA, *Air Quality Design Values*, https://www.epa.gov/air-trends/air-quality-
    design-values ...................................................................................................... 10

EPA, *Final Area Designations for the Annual Fine Particle Standard Established
    in 2012*, https://www.epa.gov/sites/default/files/2016-
    09/documents/20141218fs.pdf ............................................................................ 9

U.S. EPA, FY 2027 JUSTIFICATION OF APPROPRIATION ESTIMATES FOR THE
    COMMITTEE ON APPROPRIATIONS 570 (2026),
    https://www.epa.gov/system/files/documents/2026-04/epa-fy27-congressional-
    justification.pdf .................................................................................................... 6

**INTRODUCTION**

EPA's opposition brief does not dispute that the agency has violated the Clean Air Act by failing to promulgate area designations for the 2024 National Ambient Air Quality Standards for Fine Particulate Matter (2024 $PM_{2.5}$ NAAQS). Indeed, EPA actually admitted all material facts necessary for this Court to grant summary judgment in favor of Plaintiffs on the issue of liability: EPA conceded it has a duty to promulgate designations via publication of a notice in the Federal Register by February 7, 2026 and that it has not done so.

Instead of contesting liability or meaningfully responding to Plaintiffs' proposed remedy, EPA's brief seeks to further delay the overdue designations through appeals to prudential ripeness, standing, and a request for supplemental briefing. These arguments contrast with EPA's prior representations to both this Court and the D.C. Circuit, adding to an array of contradictions that have characterized the agency's effort to avoid its designations duty. And none of these arguments support the notion that this Court lacks what it needs to issue an order compelling EPA to fulfill its duty by a date certain. The Court should reject EPA's delay tactics and enter summary judgment in favor of State and Local Government Plaintiffs.

**ARGUMENT**

**I.    STATE AND LOCAL GOVERNMENT PLAINTIFFS' CLAIM IS RIPE**

EPA repackages its motion for abeyance as an argument from prudential ripeness. But the agency's new attempt at delay is equally unavailing. Both prongs of the prudential ripeness inquiry are satisfied here: The issues in this case are fit for review now, and postponing review would impose a "immediate, direct, and significant" hardship on State and Local Government Plaintiffs. *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009).

**A.    The Issues are Fit for Judicial Resolution**

A claim is fit for judicial decision if the "issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Publ. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 678 (9th Cir. 2026) (quoting *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 752 (9th Cir. 2020)). The sole issue underlying the claim— whether EPA violated its nondiscretionary obligation to promulgate designations no later than

1

two years after promulgating a new or revised NAAQS—is entirely a legal one requiring no further factual development. Indeed, EPA has admitted that it has not promulgated the designations. EPA's Resp. in Opp. to Pls.' Mot. Summ. J. (Opp.)[1] 4:20-21, 17:22-24, Dkt. No. 53; Decl. of Aaron Szabo ¶ 28 (Nov. 24, 2025) (Szabo 2025 Decl.), Dkt. No. 53-1. A. And the agency's failure to perform its statutory duty by the statutory deadline is final, because the February 7, 2026, deadline for promulgating the designations has passed.

EPA contends this Court should nonetheless dismiss Plaintiffs' claims to await "[f]urther factual development—in the form of a decision by the D.C. Circuit." Opp. 10:4-5, Dkt. No. 53. But the potential for a legal decision is not a "factual" development at all, let alone a relevant one. And EPA has cited to no case that has been held unripe simply because the plaintiff seeks to enforce regulatory obligations whose validity is being challenged in a separate case but that are in effect now.

The cases that EPA does cite are not on point. In *National Ass'n for Gun Rights, Inc. v. City of San Jose*, 618 F. Supp. 3d 901, 911 (N.D. Cal. 2022), the Court found a First Amendment challenge to a city's annual gun harm reduction fee—to be paid to a yet-to-be-determined nonprofit for yet-to-be-established activities—was prudentially unripe because it was unclear whether the fee would fund activities that were "impermissibly 'ideological'" in nature or "*any* kind of speech or expressive activities at all." In *Stockton v. Brown*, 152 F.4th 1124, 1149 (9th Cir. 2025), the court found plaintiffs' First Amendment and due process challenges to an agency practice of investigating physicians who had purportedly spread COVID-19 misinformation were prudentially unripe because the claim at issue sought to enjoin "hypothetical, future prosecutions, largely against unnamed and unknown doctors." Neither of these cases supports using the prudential ripeness doctrine to delay decision on a claim until parallel court litigation is complete, as EPA urges. Rather, these cases determined that further factual development was necessary because the claims were based on "contingent future events that may or may not occur as anticipated, or indeed may not occur at all," *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010), and thus there was no live case or controversy before the court. No

---

[1] Unless otherwise stated, all docket citations are to filings in this case.

gun owner had yet been required to fund any nonprofit activity in *National Ass'n for Gun Rights, Inc.*, and no physician had yet been prosecuted for spreading misinformation in *Stockton*.

By contrast, the claim in this case depends solely on events that have already transpired: EPA promulgated the 2024 $PM_{2.5}$ NAAQS, and two years passed without the agency promulgating designations. In similar cases, courts have consistently compelled EPA to issue designations even while challenges to the underlying NAAQS were unresolved. For example, in May 2012, EPA promulgated designations for the 2008 ozone NAAQS pursuant to a consent decree while challenges to that rule were pending. *See* 77 Fed. Reg. 30088, 30091 (May 21, 2012) (promulgating designations pursuant to consent decree in *Wildearth Guardians v. Jackson*, No. 11-cv-01661 (D. Ariz.)); *Mississippi v. EPA*, 744 F.3d 1334 (D.C. Cir. 2013) (resolving challenges to 2008 standards). Likewise, challenges to the 2015 ozone NAAQS were still pending when this Court ordered EPA to promulgate designations for that rule. *In re Ozone Designation Litig.*, 286 F. Supp. 3d 1082 (N.D. Cal. 2018); *Murray Energy Corp. v. EPA*, 936 F.3d 597 (D.C. Cir. 2019). And in each case, it was appropriate for the court to resolve the litigation before it, because the claims *before that court* were fit for review.

EPA's argument that the issues here are not fit for review merely because the *Kentucky* challenge is still pending has no limiting principle. At a minimum, if EPA is not required to fulfill its obligations under the 2024 $PM_{2.5}$ NAAQS, it is not clear why any other party would be either. Yet, EPA has previously told this Court that, "even absent designations," new and modified major sources of emissions "must already show compliance with the prevention of significant deterioration requirements set forth in the 2024 PM2.5 NAAQS." EPA Reply in Supp. of Mot. for Abeyance 3-4, *Alliance of Nurses for Healthy Environments v. EPA*, No. 26-cv-03118 (N.D. Cal. May 11, 2026), Dkt. No. 40. And beyond implementation of the 2024 $PM_{2.5}$ NAAQS, the same alleged defect would arise in any effort to compel EPA to meet Clean Air Act implementation deadlines—not to mention other agencies operating under other statutes—for other rules that remain in effect while they are being challenged. EPA's argument thus threatens to turn challenges to agency rules into automatic stays. The prudential ripeness doctrine is not nearly so expansive. If it were, parties could effectively obtain an automatic stay every time a Clean Air

3

Act rule were challenged. But the Clean Air Act provides no such automatic stay, not even when the agency itself formally initiates reconsideration proceedings. *See* 42 U.S.C. § 7607(d)(7)(B); *see also California v. U.S. EPA*, 360 F. Supp. 3d 984, 993-94 (N.D. Cal. 2018) (denying motion to stay suit to compel EPA implementation of landfill emissions rule, even though EPA had commenced rulemaking to amend rule). Rather, parties seeking a stay must show a likelihood of success on the merits and irreparable harm in the absence of preliminary relief, while also addressing the balance of equities and the public interest. *Ohio v. EPA*, 603 U.S. 279, 291 (2024).

The fact that EPA has "confessed" error, Opp. 9:12, provides no meaningful limiting principle. The agency has not administratively repealed or stayed the 2024 $PM_{2.5}$ NAAQS. And "EPA's consent is not alone a sufficient basis for us to stay or vacate a rule." *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015). The 2024 $PM_{2.5}$ NAAQS are in effect, as is EPA's duty to promulgate designations. Indeed, that was the entire premise of EPA urging the D.C. Circuit to vacate the 2024 $PM_{2.5}$ NAAQS before the February designations deadline. EPA Mot. for Vacatur 1, *Kentucky v. EPA,* No. 24-1050 (D.C. Cir. Nov. 16, 2025) (ECF 2147050); EPA Reply in Supp. of Mot. for Vacatur 23, *Kentucky v. EPA,* No. 24-1050 (D.C. Cir. Dec. 23, 2025) (ECF 2151956). As that request at least implicitly acknowledged, the mere "priorities or preferences of federal officers" cannot overcome the requirements of federal law. *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).

**B.      Postponing Review Would Impose Immediate, Direct, and Significant Hardship**

Because the issues are fit for resolution, the Court need not assess hardship to the parties. The hardship prong "serves as a counterbalance to any interest the judiciary has in delaying consideration of a case," and, because there is no judicial interest in delay, "the hardship analysis is 'not relevant'" here. *Nago*, 174 F.4th at 678.

In any event, withholding review of this matter—and thus withholding an order to compel EPA to issue designations—would "result in a direct and immediate hardship and would entail more than possible financial loss" to Plaintiffs. *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th

4

Cir. 2010). As explained in Section II *infra*, the ongoing lack of designations is already interfering with State and Local Government Plaintiffs' air quality planning efforts and depriving State and Local Government Plaintiffs of numerous regulatory tools Congress provided to support efforts to address pollution from both within and without our borders. *See also* Pls.' Mot. Summ. J. 12:13—14:15, Dkt. No. 40 (States' MSJ); Decl. of Ariel Fideldy (Fideldy Decl.) ¶¶ 30-33 (Apr. 24, 2026), Dkt. No. 40-1; Opp. to Abeyance 5-6, *Alliance of Nurses for Healthy Environments,* No. 26-cv-03118 (N.D. Cal. May 12, 2026), Dkt. No. 42. Those harms are prolonged by each day EPA further delays fulfilling its duty to issue designations. And here EPA seeks a much longer and indefinite delay, pinned to a D.C. Circuit case that is *still in abeyance*.

EPA's assertion that the D.C. Circuit is "poised to act on the matter," Opp. 10:15-16, is groundless. The D.C. Circuit has given no indication when, or even if, it will lift the abeyance, or how long it will take to decide the case once it does. In the one recent case Plaintiffs are aware of where EPA had a case put in abeyance after argument, the D.C. Circuit granted a motion to lift the abeyance in May 2025, issued its decision in September 2025, and issued the mandate in January 2026. *See* Per Curiam Order, *SSM Litig. Group v. EPA,* No. 23-1267 (D.C. Cir. May 7, 2025); Mandate, *SSM Litig. Group*, No. 23-1267 (D.C. Cir. Jan. 12, 2026). Moreover, nothing in EPA's motion explains why—under its theory—a decision from the D.C. Circuit would suffice to make the issues fit for review. EPA could always take steps to prolong any supposed "uncertainty as to legal status of the Standards," Opp. 10:3, simply by pursuing further review of a D.C. Circuit decision upholding the standards, or by engaging in a rulemaking to repeal the 2024 PM$_{2.5}$ NAAQS.

Finally, the hardship Plaintiffs would suffer here weighs especially heavily in favor of resolution given that EPA was the party that sought and obtained the abeyance of the D.C. Circuit case EPA now claims makes this case unripe. Moreover, EPA did so while representing that abeyance there would not harm Plaintiffs precisely because the 2024 PM$_{2.5}$ NAAQS remained in effect and Plaintiffs could seek to compel the February 2026 designations in district court. EPA's Reply in Supp. of Mot. for Abeyance 2, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir. May 9, 2025) (ECF 2115171); EPA's Reply in Supp. of Mot. to Extend Abeyance

5

3, *Kentucky*, No. 24-1050 (D.C. Cir. Aug. 27, 2025) (ECF 2132340). Now that Plaintiffs have sought to compel these designations, EPA contradicts itself by pointing to the D.C. Circuit's pending decision as a reason to further delay having to make the designations. EPA cannot have it both ways, and the Court should not exercise its equitable discretion to reward EPA's course of action. *See Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022) (judicial estoppel appropriate to prevent parties from obtaining advantage from inconsistent arguments).[2]

## II.    PLAINTIFFS HAVE STANDING

EPA also seeks to avoid an order by making a passing attack on State and Local Government Plaintiffs' standing. That attack fails as well.

As explained in our Motion for Summary Judgment, EPA's failure to promulgate designations as required by the Clean Air Act deprives State and Local Government Plaintiffs of a variety of regulatory tools the Clean Air Act provides—many that support our efforts to address pollution from within our borders, and others that protect us from pollution from upwind states. States' MSJ, 12:13-13:17, Dkt. No. 40. For those of us with areas that will ultimately have nonattainment designations, EPA's delay in promulgating those designations will in turn delay our own planning processes, as well as potential federal approval of our emission control strategies, and consequently, the ability to enforce those plans in federal court and the requirement that federal agencies comply with them. States' MSJ, 6:20-25, 12:26-13:3 (citing 42 U.S.C. § 7506(c)); *id*. §§ 7604(a)(1), (f)(3); *see also* Fideldy Decl. ¶¶ 30, 32, Dkt. No. 40-1; Dickerman Decl. ¶¶ 19-22, Dkt. No. 40-2. For a subset of these areas—i.e. those that do not currently have nonattainment designations—EPA's inaction impedes our ability to apply for federal grants designed to support state efforts to address nonattainment. Fideldy Decl. ¶ 33; *see also* U.S. EPA, FY 2027 JUSTIFICATION OF APPROPRIATION ESTIMATES FOR THE COMMITTEE ON APPROPRIATIONS 570 (2026), https://www.epa.gov/system/files/documents/2026-

---

[2] EPA received the notice letters in this case in February. In June, respondent-intervenors (many of them Plaintiffs here) informed the D.C. Circuit, via letters under Federal Rule of Appellate Procedure 28(j), that EPA was attempting to use the pendency of that litigation to delay proceedings here. See Letter, *Kentucky*, No. 24-1050, ECF 2176426 (D.C. Cir. June 2, 2026) and Letter, ECF 2176670 (June 4, 2026). In between, EPA remained completely silent, doing nothing to encourage the D.C. Circuit to move forward with the litigation.

04/epa-fy27-congressional-justification.pdf, (describing Targeted Airshed Grant eligibility as limited to nonattainment areas); 23 U.S.C. § 149(b) (making nonattainment designations a prerequisite for Congestion Management and Air Quality Improvement grants). That inaction also prevents us from relying on existing federal New Source Review requirements—including emissions offsetting and compliance with the "lowest achievable emission rate"—designed to prevent new and modified major sources from worsening $PM_{2.5}$ pollution. 42 U.S.C. § 7503; *see* Dickerman Decl. ¶ 17. And regardless of our attainment status, for areas downwind of likely nonattainment areas, EPA's inaction means fewer restrictions on upwind sources of emissions, and thus greater exposure to pollution beyond our control. Dickerman Decl. ¶ 22; Keith Decl. ¶ 14, Dkt. No. 40-3; Mirzakhilili Decl. ¶ 21, Dkt. No. 40-4. Finally, for areas likely to be designated attainment, EPA's delay can prolong regulatory uncertainty and waste regulatory resources. Mirzakhilili Decl. ¶¶ 17, 23.

These inevitable consequences of EPA's inaction are apparent from the statute itself. EPA does not seriously argue otherwise. It focuses instead on setting up and knocking down strawmen, arguing that the Clean Air Act's anti-backsliding provision does not give us standing and that the lack of designations does not "prevent[]" States from taking steps to protect public health in their jurisdictions. Opp. 12:12-22, Dkt. No. 53. But we do not assert either as a basis for our standing.[3]

EPA invokes the maxim that standing "is ordinarily substantially more difficult to establish" for parties who are not the object of government action or inaction, Opp. 11:21-23 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). But State and Local Government Plaintiffs *are* the object of designations, so—even absent any special solicitude to States—there should be "little question" that we have standing to challenge EPA's inaction and compel designations. *Lujan*, 504 U.S. at 561-62. Indeed, courts have consistently heard suits brought by States and local governments to compel EPA to issue designations. *In re Ozone Designation Litig.*, 286 F. Supp. 3d 1082; *Mississippi Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 150-53 (D.C. Cir. 2015).

---

[3] EPA also does not dispute that we suffer procedural injury from the delays in state implementation planning processes owing to a lack of designations. Rather, EPA suggests we are somehow being hypocritical for wanting that injury to be remedied quickly. Opp. 6:8-11.

7

EPA's demand, Opp. 12:27-13:2, that we provide more detail about exactly how we would use and benefit from each of these regulatory protections if they were available to us is misplaced. The statute itself entitles States to these benefits, and, in any event, our declarations provide specific examples of how each of these benefits are used in practice, and identified specific areas that would benefit from them. *See*, *e.g.*, Fideldy Decl. ¶¶ 17, 33, Dkt. No. 40-1 (describing Plumas County's use of grant funding for woodstove replacement, and San Diego's inability to obtain for similar grant absent nonattainment designation); Dickerman Decl. ¶ 17, Dkt. No. 40-2 (New Source Review permitting requirements in Harris County).

Finally, having previously argued that the Court should delay resolution because the plaintiffs submitted too many declarations, Mot. For Abeyance 3:14-16, *Alliance of Nurses for Healthy Environments*, No. 26-cv-03118, Dkt. No. 31, EPA now argues that we have submitted too few. To be sure, State and Local Government Plaintiffs must show standing for each claim. Opp. 11:14-17, Dkt. No. 53. But we have only one claim—that EPA failed to comply with the Act's mandate to promulgate designations for all areas of the country within two years of the 2024 $PM_{2.5}$ NAAQS. Compl. ¶¶ 56-60, Dkt. No. 1. The injuries we assert flow from EPA's failure to comply with that single obligation. Because the Clean Air Act "imposes no narrower obligation," we need not submit declarations for every area of the country. *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 985 (9th Cir. 1994). The Ninth Circuit has made clear in such cases that it suffices if Plaintiffs can show injury to a "representative number" of those areas affected, *id*., and we have done just that. EPA's demand for more declarations is nothing more than yet another meritless attempt at delay.

## III.    EPA'S CHOICE NOT TO ESTIMATE HOW MUCH TIME IT NEEDS TO FULFILL ITS DUTY DOES NOT MEET THE AGENCY'S BURDEN

In one last attempt at delay, EPA asks this Court to hold off on issuing any order compelling it to promulgate designations until the Court first rules on EPA's other delay tactics *and* then allows a subsequent full round of briefing on remedy. Opp. 18:14-17, Dkt. No. 53. The Court should decline to indulge this final attempt to delay resolution of this case.

State and Local Government Plaintiffs' Reply in Support of Motion for Summary Judgment (4:26-cv-03500-HSG)

We requested that this Court require EPA to promulgate all area designations via publication of a notice in the Federal Register within 150 days of this Court's order, and explained why such an order was both appropriate and feasible. *See* States' MSJ, 16:13-22:13, Dkt. No. 40. In response, EPA simply described the typical tasks involved in the designation process. Opp. 16-17, Dkt. No. 53; Opp., Exh. C, Decl. of Aaron Szabo ¶¶ 7-28 (June 1, 2026) (Szabo 2026 Decl.), Dkt. No. 53-3. But "[m]erely describing what tasks must be performed in the various phases as EPA does is [] unhelpful, as those steps presumably have always been required." *California v. U.S. EPA*, 385 F. Supp. 3d 903, 915 (N.D. Cal. 2019). Nothing in EPA's brief or accompanying declaration supports its position that a 150-day deadline is infeasible. EPA's brief and declaration boil down to general statements that the designation process is resource-intensive and the proposed timeline is unworkable. Opp. 17; *see e.g.*, Szabo 2026 Decl. ¶¶ 29, 33, 36. But EPA does not explain *why* it needs more than 150 days to promulgate designations. *Id*. EPA did "not provide sufficient detail to justify" its position, *In re Ozone Designation Litig.*, 286 F. Supp. 3d at 1089; instead, EPA affirmatively chose not to provide *any* detail as to how much time any of the steps in the process might take, how much work EPA has already invested in them, and how much staff EPA has available to work on completing them.

Other statements are also internally inconsistent and inconsistent with EPA's own prior practice. For example, EPA states that it would be "unrealistic that EPA could promulgate final designations immediately at the conclusion of the 120-day period." Szabo 2026 Decl. ¶ 29, Dkt. No. 53-3. Yet, that is exactly what EPA planned to do here. EPA's anticipated timeline for these designations allows EPA 120 days exactly from the date of sending 120-day notice letters to promulgating the final designations. Szabo 2026 Decl., Att. 1, Dkt. No. 53-3. EPA explained that this schedule allows 60 days for states to submit additional information regarding designation recommendations and 60 days for EPA to "fully consider" such information. Szabo 2026 Decl., Att. 1 at 3, Dkt. No. 53-3. This approach is the same one EPA has taken in the past. For the 2012 $PM_{2.5}$ NAAQS, EPA sent 120-day notice letters on August 19, 2014, and issued final designations on December 18, 2014—i.e. in 121 days. Air Quality Designations for the 2012

PM$_{2.5}$ NAAQS, 80 Fed. Reg. 2206, 2209, 2211 (Jan. 15, 2015); EPA, *Final Area Designations for the Annual Fine Particle Standard Established in 2012*, https://www.epa.gov/sites/default/files/2016-09/documents/20141218fs.pdf. That EPA does not have a freestanding duty to issue 120-day letters, Opp. 15, is beside the point. Plaintiffs do not argue that the Court should order EPA to issue 120-day letters, only that the Court exercise its "broad latitude in fashioning equitable relief," *Alaska Ctr. for Env't v. Browner*, 20 F.3d at 986, to ensure any 120-day letters EPA does issue not create a conflict between the statute and any Court-imposed deadline.

EPA also points to several "unknowns" that "hinder" its ability to estimate an appropriate timeline. Szabo 2026 Decl. ¶¶ 32-38, Dkt. No. 53-3. But, to the extent they are "unknowns" at all, none establish that Plaintiffs' deadline (or any other) is infeasible. To start, EPA's justiciability arguments have no bearing on how much time EPA needs to complete designations. *Contra* Opp. 18:7-8, Dkt. No. 53; Szabo 2026 Decl. ¶ 32, Dkt. No. 53-3.

And EPA's assertions that it "has historically used area-specific analyses to support nonattainment area boundary determinations" and that some areas may require "more detailed evaluation than others," Szabo 2026 Decl. ¶¶ 33-34, Dkt. No. 53-3, are just general statements about the tasks involved in the designation process. It is unclear what is "unknown" about these tasks. EPA has the 2022-2024 design values, and—despite claiming that the 2025 data was "not yet available"—EPA has already done a "preliminary" review of and just published the 2025 data. Szabo 2026 Decl. ¶ 34, Dkt. No. 53-3; *see* EPA, *Air Quality Design Values*, https://www.epa.gov/air-trends/air-quality-design-values. Undercutting its claims that this "unknown" will significantly delay its ability to finalize designations, EPA notes that it "typical[ly]" allows states to submit early certified data rather than waiting for the design values to be published. Szabo 2026 Decl. ¶¶ 34, 39-41. Moreover, EPA typically does so between promulgation and the effective date of designations, Opp. 16:1-4, Szabo 2026 Decl. ¶ 39, so it cannot insist that it also needs to delay promulgation for this purpose.

EPA also argues that it will need additional time both because some States submitted designations that EPA may modify, Szabo 2026 Decl. ¶ 35, Dkt. No. 53-3, and because some

States did not submit designation recommendations, *id.* ¶ 36. But Congress explicitly contemplated both situations. 42 U.S.C. § 7407(d)(1)(B)(ii). Likewise, that some states may submit exceptional events demonstrations for 2025 and that "EPA intends to follow its practice of using the most recent three years of data," Szabo 2026 Decl. ¶ 37, merely describes the usual designation process. EPA does not claim—or offer any justification for a claim—that states will submit a significant number of exceptional events demonstrations. *Id*. And California—the state with the most nonattainment areas—does not anticipate submitting any exceptional events demonstrations for 2025. Attach. A, Second Declaration of Ariel Fideldy ¶ 12 (June 10, 2026).

The final "unknown" is that EPA intends to include a public notice-and-comment process, Szabo 2026 Decl. ¶ 38, Dkt. No. 53-3, which Congress explicitly encouraged the agency to do, 42 U.S.C. § 7407(d)(2)(B), and which EPA "typically" does, Szabo 2026 Decl., Att. 1 at 3. But EPA gives no reason to think providing notice and comment itself independently requires EPA to further delay promulgation. EPA generally opens a comment period just after sending 120-day letters and is still able to review comments and submitted data, update its analyses and technical support documents, respond to comments, and complete final designations within the 120-day period. *Id*.

None of these tasks are actually unknown to the agency, and EPA regularly estimates how long it will take to complete tasks required by statute. *See, e.g.*, *California*, 385 F. Supp. 3d at 912; *In re Ozone Designation Litig.*, 286 F. Supp. 3d at 1088. EPA "has sufficient institutional experience" to estimate a deadline, *Ctr. for Biological Diversity v. Wheeler*, No. 19-cv-02462-RS, 2019 WL 9464390, at *3 (N.D. Cal. Dec. 11, 2019), and had plenty of time and available pages in its brief to propose and justify a timeline.[4] But it chose not to do so. Instead, EPA decided to kick the can down the road and inform this Court that EPA will provide a proposed remedy "[i]n the event [] uncertainties are resolved in Plaintiffs' favor." Opp. 18:8-9, Dkt. No. 53.

EPA's claim that it "cannot" propose a deadline, Opp. 18:8, along with its affirmative decision not to provide details about how much time it needs to complete any remaining

---

[4] EPA told the D.C. Circuit in November that this deadline was looming, received notice of intent letters in February, and stipulated to an extended briefing schedule in April. It asked for 50 pages for its response brief and only used 18 of the 40 pages it was given.

11

steps, should be taken "at face value." *California*, 385 F. Supp. 3d at 913. There is no information that EPA will have later that it does not have now, and the agency should not get to delay proceedings here by insisting on another bite at the apple. *See Bernstein v. Virgin Am., Inc.¸* 365 F. Supp. 3d 980, 985-86 (N.D. Cal. 2019) (finding that arguments that defendant could have—but did not—raise earlier in an opposition to a motion for summary judgment were waived). EPA's choice to withhold information further evidences its determination to delay resolution of this case for as long as possible and is highly prejudicial to Plaintiffs and our efforts to obtain relief by the end of this calendar year. The Court should not indulge these "footdragging efforts by a delinquent agency." *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974). However, if this Court believes additional factual information is required to order a remedy in this case, Plaintiffs propose that, at most, (1) EPA be allowed an additional filing of no more than 7 pages total, compliant with Civil Local Rule 3-4(c) and filed no later than June 22, detailing how much time the agency needs to complete its remaining tasks as expeditiously as practicable, in light of technical and resource constraints, and (2) Plaintiffs be afforded the opportunity to respond, in no more than 10 pages combined, no later than July 9. These constraints are appropriate to ensure that EPA's choice not to provide this information in its opposition to summary judgment does not further prejudice Plaintiffs' efforts to obtain expeditious relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted. The Court should declare EPA in violation of its nondiscretionary duty to promulgate designations via publication of a notice in the Federal Register, set an interim 30-day deadline for the agency to issue any 120-day letters that it plans to send, and require the agency to promulgate final designations within 150 days of this Court's order.

Dated:  June 11, 2026

Respectfully submitted,

**FOR THE STATE OF CALIFORNIA**
ROB BONTA
ATTORNEY GENERAL

CHRISTIE VOSBURG
MYUNG J. PARK
Supervising Deputy Attorneys General
JONATHAN A. WIENER
STACY J. LAU
Deputy Attorneys General

*/s/ Micaela M. Harms*
MICAELA M. HARMS
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3743
micaela.harms@doj.ca.gov

**FOR THE STATE OF CONNECTICUT**
WILLIAM TONG
ATTORNEY GENERAL

*/s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

**FOR THE STATE OF HAWAI'I**
ANNE E. LOPEZ
ATTORNEY GENERAL

MELISSA J. KOLONIE
Supervising Deputy Attorney General

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 South King Street, Room 200
Honolulu, HI 96813
(808) 587-3050
Lyle.t.leonard@hawaii.gov

**FOR THE STATE OF MARYLAND**
ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-641
sgoldstein@oag.maryland.gov

*Pro hac vice application forthcoming*

13

**FOR THE COMMONWEALTH OF MASSACHUSETTS**
ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ Marcus Holmes
MARCUS HOLMES
Assistant Attorney General & Director of Environmental Justice
Environmental Protection Division
BRIAN CLAPPER
Assistant Attorney General
Environmental Protection Division
TURNER SMITH
Assistant Attorney General & Deputy Bureau Chief
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
Marcus.D.Holmes@mass.gov
Brian.Clappier@mass.gov
Turner.Smith@mass.gov

**FOR THE STATE OF MINNESOTA**
KEITH ELLISON
Attorney General

/s/ Cat Rios-Keating
CAT RIOS-KEATING
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-7302
Catherine.Rios-Keating@ag.state.mn.us

**FOR THE STATE OF NEW YORK**
LETITIA JAMES
ATTORNEY GENERAL

/s/ Nicholas C. Buttino
NICHOLAS C. BUTTINO
Assistant Attorney General
New York Attorney General's Office
State Capitol
Albany, NY 12224
518-776-2406
Nicholas.Buttino@ag.ny.gov

**FOR THE STATE OF OREGON**
DAN RAYFIELD
ATTORNEY GENERAL

/s/ Paul Garrahan
PAUL GARRAHAN
Attorney-in-Charge, Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

**FOR THE STATE OF VERMONT**
CHARITY R. CLARK
ATTORNEY GENERAL

/s/ Melanie Kehne
MELANIE KEHNE
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
melanie.kehne@vermont.gov

**FOR THE STATE OF WISCONSIN**
JOSHUA L. KAUL
ATTORNEY GENERAL

/s/ Bradley J. Motl
BRADLEY J. MOTL
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857
(608) 267-0505
bradley.motl@wisdoj.gov

14

**FOR THE DISTRICT OF COLUMBIA**
BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Coty Montag*
COTY MONTAG
Deputy Attorney General
LAUREN CULLUM
Special Assistant Attorney General
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
coty.montag@dc.gov
lauren.cullum@dc.gov

**FOR HARRIS COUNTY, TEXAS**
JONATHAN G.C. FOMBONNE
COUNTY ATTORNEY

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
Managing Counsel
Affirmative and Environmental Divisions
ELIZABETH HIDALGO
Assistant County Attorney
Environmental Division
Harris County Attorney's Office
1010 Lamar, 11th Floor
Houston, Texas 77002
(832) 596-9786
Sarah.Utley@harriscountytx.gov
Elizabeth.Hidalgo@harriscountytx.gov

**FOR THE CITY OF NEW YORK**
STEVEN BANKS
CORPORATION COUNSEL

*/s/ Nathan Taylor*
NATHAN TAYLOR
Assistant Corporation Counsel
New York City Law Department
100 Church St.
New York, New York, 10007
Tel. 212-356-2315
ntaylor@law.nyc.gov

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories have concurred in the filing of this document.

*/s/ Micaela M. Harms*

SF2026400170
39897415

15

State and Local Government Plaintiffs' Reply in Support of Motion for Summary Judgment (4:26-cv-03500-HSG)