ROB BONTA
Attorney General of California
CHRISTIE VOSBURG
MYUNG J. PARK
Supervising Deputy Attorneys General
STACY LAU (SBN 254507)
JONATHAN A. WIENER (SBN 265006)
MICAELA M. HARMS (SBN 329552)
Deputy Attorneys General
 455 Golden Gate Avenue
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3743
 Fax: (415) 703-5480
 Micaela.Harms@doj.ca.gov
*Attorneys for Plaintiff State of California by and
through Attorney General Rob Bonta and the
California Air Resources Board*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, STATE OF CONNECTICUT, STATE OF HAWAI'I, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MINNESOTA, STATE OF NEW YORK, STATE OF OREGON, STATE OF VERMONT, STATE OF WISCONSIN, DISTRICT OF COLUMBIA, COUNTY OF HARRIS, TEXAS, AND CITY OF NEW YORK, NEW YORK,** | No. 4:26-cv-03500-HSG **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| v. | |
| **LEE ZELDIN, as Administrator of the United States Environmental Protection Agency,** | |
| Defendant. | |

Plaintiffs California, by and through Attorney General Rob Bonta and the California Air Resources Board, Connecticut, Hawai'i, Maryland, Massachusetts, Minnesota, New York,

Oregon, Rhode Island, Vermont, Wisconsin, the District of Columbia, the County of Harris, Texas, and the City of New York, New York (collectively, State and Local Government Plaintiffs) allege as follows:

**NATURE OF THE ACTION**

1. The State and Local Government Plaintiffs bring this action to compel Defendant Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency, (referred to herein as EPA or the Administrator), to fulfill his mandatory duty under the Clean Air Act to designate all areas of the country as attainment or nonattainment under the 2024 National Ambient Air Quality Standards (NAAQS) for fine particulate matter (2024 $PM_{2.5}$ NAAQS). These standards are intended to protect the public from the very serious health impacts caused by fine particulate matter. Even at low ambient concentrations or with short-term exposure, fine particulate matter can cause premature death, cardiovascular disease, and respiratory damage, among other impacts. But the standards cannot be fully implemented until EPA promulgates the designations. EPA's failure to issue designations not only seriously endangers public health and frustrates congressional intent that the standards be fully implemented "as expeditiously as practicable," 42 U.S.C. § 7502(a)(2)(A), (c)(1), but it also strips states and local governments—who have the "primary responsibility" for "air pollution control at its source," 42 U.S.C. § 7401(a)(3)—of regulatory tools and incentives that Congress provided to them to control air pollution. Promulgation of the designations will equip State and Local Government Plaintiffs with the full suite of Clean Air Act mechanisms to reduce fine particulate matter pollution within their borders, prevent the grave public health harms caused by fine particulate matter, and reduce the financial burden associated with those public health harms.

2. Sections 107(d)(1)(B) and 107(d)(2)(A) of the Clean Air Act, 42 U.S.C. § 7407(d)(1)(B), (d)(2)(A), require EPA to designate all areas of the country as "attainment," "nonattainment," or "unclassifiable" for the NAAQS "as expeditiously as practicable, but in no case later than 2 years" from the date EPA promulgates a new or revised NAAQS; and to promulgate those designations via publication of a notice in the Federal Register. EPA promulgated the 2024 $PM_{2.5}$ NAAQS on February 7, 2024, making the statutory deadline to

promulgate designations February 7, 2026. Yet, EPA has still not promulgated any designations, thereby thwarting full implementation of the 2024 $PM_{2.5}$ NAAQS and their accompanying public health benefits. State and Local Government Plaintiffs therefore seek both declaratory and injunctive relief requiring EPA to promptly promulgate all overdue designations via a notice in the Federal Register.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a), which authorizes any person, after duly giving notice, to commence a citizen suit in district court against the EPA Administrator for failing to perform a nondiscretionary duty under the Clean Air Act, and which grants district courts jurisdiction to order the Administrator to perform such nondiscretionary duty. The Court also has jurisdiction to hear this civil action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel officer or agency to perform a duty owed to plaintiffs).

4. On February 17, 2026 and April 16, 2026, by certified mail, State and Local Government Plaintiffs gave notice of this action to Defendant as required by Section 304 of the Clean Air Act, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. Part 54. (Exhibit 1; Exhibit 2.)

## VENUE

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e), because a substantial part of the events or omissions giving rise to State and Local Government Plaintiffs' claims occurred in this judicial district, and the State of California is a resident of this district. Defendant's failure to perform the nondiscretionary duty to designate all areas as attainment or nonattainment under the 2024 $PM_{2.5}$ NAAQS via publication of a notice in the Federal Register is adversely impacting areas within this judicial district, which experience elevated levels of fine particulate matter pollution.

6. Defendant has failed to issue any designation for the San Francisco Bay Area, which is comprised of the counties of Marin, Napa, Contra Costa, Alameda, Santa Clara, San Francisco, and San Mateo, and portions of the counties of Solano and Sonoma. The lack of a designation for the 2024 $PM_{2.5}$ NAAQS in the Bay Area undermines the ability of state and local

3

regulators to improve the region's air quality, by delaying implementation of pollution control measures and depriving those regulators of crucial tools that are not otherwise readily available.

### DIVISIONAL ASSIGNMENT

7.    Intradistrict assignment of this matter to the San Francisco or Oakland Division of the Court is appropriate pursuant to Civil Local Rule 3-2(c) and (d), because a substantial part of the events or omissions giving rise to the claims in this case occurred in the County of San Francisco.

### PARTIES

8.    Plaintiff State of California is a sovereign state in the United States of America. California is represented by Attorney General Rob Bonta, who is the chief legal officer of California. Cal. Const. Art V, § 13. The California Air Resources Board is the state agency responsible for the preparation of California's state implementation plan and is required to adopt rules and regulations that will achieve the NAAQS. Cal. Health & Saf. Code §§ 39602, 39602.5(a).

9.    Plaintiff State of Connecticut is a sovereign state in the United States of America. Connecticut is represented by Attorney General William Tong, who is the chief legal officer of Connecticut.

10.    Plaintiff State of Hawai'i is a sovereign state in the United States of America. Hawai'i is represented by Attorney General Anne E. Lopez, who is the single executive that heads the State of Hawai'i, Department of the Attorney General that represents the State in all civil actions in which the State is a party. Hawai'i Revised Statutes (HRS) § 26-7. The State of Hawai'i, Department of Health, Clean Air Branch by and through the Director of Health is the State agency responsible for ambient air quality standards in the State and maintaining the NAAQS. HRS §342B-12.

11.    Plaintiff State of Maryland is a sovereign state in the United States of America. Maryland is represented by Attorney General Anthony G. Brown, who is the chief legal officer of Maryland and responsible for cases arising under Title 2 of the Environment Article, Annotated Code of Maryland. Md. Code Ann. Env't § 2-614 (LexisNexis 2013); Md. Code Ann. State

4

Gov't § 6-106. The Maryland Department of the Environment is the state agency responsible for the preparation of Maryland's state implementation plan and is required to adopt rules and regulations that will achieve the NAAQS. Md. Code Ann. Env't § 2-301(b).

12.     Plaintiff Commonwealth of Massachusetts is a sovereign state in the United States of America. Massachusetts is represented by Attorney General Andrea Joy Campbell, who is the chief legal officer of the Commonwealth of Massachusetts. M.G.L. c. 12, § 3. The Massachusetts Department of Environmental Protection is an agency of the Commonwealth charged with administering and enforcing the environmental laws of the Commonwealth, including the preparation of Massachusetts's state implementation plan and the adoption of rules and regulations that will achieve the NAAQS. M.G.L. c. 111, §§ 142A-D; 310 CMR § 7.00.

13.     Plaintiff State of Minnesota is a sovereign state of the United States of America. Minnesota is represented by and through its chief legal officer, Attorney General Keith Ellison. Minn. Stat. § 8.01.

14.     Plaintiff State of New York is a sovereign state in the United States of America. New York is represented by Attorney General Letitia James, who is the head of the New York State Department of Law. N.Y. Const. Art. V, § 4. Plaintiff the City of New York is a municipal corporation organized and existing under the laws of the State of New York.

15.     Plaintiff State of Oregon is a sovereign state in the United States of America. Oregon is represented by Attorney General Dan Rayfield, who is the chief legal officer of Oregon. Or. Rev. Stat. § 180.060. The Oregon Environmental Quality Commission and the Oregon Department of Environmental Quality are the state entities responsible for the preparation of Oregon's state implementation plan and are authorized to adopt rules and regulations that will achieve the NAAQS. Or. Rev. Stat. §§ 468A.015, 468A.025 and 468A.035.

16.  Plaintiff State of Rhode Island is a sovereign State in the United States of America and is represented by Attorney General Peter F. Neronha, who is the chief law enforcement officer of Rhode Island.

17. Plaintiff State of Vermont is a sovereign state in the United States of America. Vermont is represented by Attorney General Charity R. Clark, who is authorized to bring this action on behalf of the State.

18. Plaintiff State of Wisconsin is a sovereign state in the United States of America. Wisconsin is represented by Joshua L. Kaul, the Attorney General of Wisconsin. Attorney General Kaul is authorized to pursue this action. The Wisconsin Department of Natural Resources is the state agency responsible for the preparation of Wisconsin's state implementation plan and is required to adopt rules and regulations that will achieve the NAAQS. Wisconsin Stat. §§ 285.11, 285.21.

19. The District of Columbia is a municipal corporation organized under the Constitution of the United States. It is empowered to sue and be sued, and is the local government for the territory constituting the permanent seat of the federal government. The District is represented by and through its chief legal officer, Attorney General Brian L. Schwalb. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code. § 1-301.81.

20. Plaintiff County of Harris, Texas was created as a body corporate and politic under the laws of the State of Texas and is recognized as a legal subdivision of the State of Texas. Vernon's Ann. Texas Const. Art. 9, § 1 and 11, § 1. Harris County is represented by the Harris County Attorney's Office, the chief civil law office for Harris County. Tex. Const. art. V, § 21.

21. Plaintiff City of New York, New York is a municipal corporation organized and existing under the laws of the State of New York.

22. Defendant Lee Zeldin is the Administrator of the Environmental Protection Agency. He is sued in his official capacity.

### **STANDING**

23. The State and Local Government Plaintiffs have standing to bring this action, because they can "show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023). The State and Local Government

Plaintiffs have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Proprietary harms resulting from federal action—such as a likely loss of federal funds, diversion of resources, and degradation of data—can demonstrate an injury in fact. *See Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019); *see also Dep't of Homeland Sec. v. Regents of the Univ. Of California*, 591 U.S. 1 (2020) (proprietary harm on behalf of the Regents of California because of impacts to student immigration status and associated tuition dollars).

24.     EPA's failure to promulgate timely attainment or nonattainment designations under the 2024 PM$_{2.5}$ NAAQS injures State and Local Government Plaintiffs in their sovereign, quasi-sovereign, and proprietary interests.

25.     EPA's failure will delay and/or deprive State and Local Government Plaintiffs with nonattainment areas of the ability to use regulatory tools they are entitled to under federal law to address pollution, including enforcement mechanisms against polluters in federal court, prohibitions against federal activities which do not conform to approved state implementation plans, New Source Review permit requirements preventing new and modified stationary sources from worsening PM$_{2.5}$ pollution, and eligibility for federal grants that support state efforts to reduce harmful air pollution in nonattainment areas.

26.     The lack of designations also harms State and Local Government Plaintiffs that are downwind of states that would be designated nonattainment, by delaying required emissions reductions in those upwind states and concomitant reductions in the amount of pollution transported to downwind State and Local Government Plaintiffs' jurisdictions.

27.     EPA's delay in promulgating designations will further cause State and Local Government Plaintiffs to expend additional resources to evaluate and submit further ambient air quality monitoring data to the EPA by shifting the timeline for the submission of such data.

28.     EPA's failure also increases costs to State and Local Government Plaintiffs by worsening air quality and harming the health and economic well-being of their populaces, *see Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Baez*, 458 U.S. 592, 602 (1982)), with the resulting increase in PM$_{2.5}$-related deaths, cardiac and respiratory diseases, asthma cases, and

7

hospital and emergency room admissions for respiratory conditions, and causing State and Local Government Plaintiffs to bear additional expenses in their roles as administrators of public health systems.

29. EPA has caused these injuries to the State and Local Government Plaintiffs by failing to make timely attainment or nonattainment designations for the 2024 $PM_{2.5}$ NAAQS. The relief requested will redress these injuries by requiring EPA to perform the mandatory duty to promulgate designations for all areas of the country.

## STATUTORY AND REGULATORY FRAMEWORK

30. The Clean Air Act requires EPA to promulgate primary and secondary NAAQS for criteria pollutants, such as fine particulate matter. 42 U.S.C. § 7409(a); *see* 40 C.F.R. §§ 50.13, 50.18, 50.20. Primary NAAQS must be set at a level "requisite to protect the public health" with "an adequate margin of safety," while secondary NAAQS must be set at a level "requisite to protect the public welfare." 42 U.S.C. § 7409(b); *see Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 472 (2001) (determining that EPA must set primary NAAQS based solely on public health considerations, without reference to the cost or feasibility of achieving the standards). "'[P]ublic health' includes not only the health of average individuals, but also that of sensitive populations (such as children or older adults) or at-risk populations (such as those living in areas with worse air quality) who may be particularly vulnerable to air pollution." EPA Brief at 6, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2070774 (citing *Am. Lung Ass'n v. EPA*, 134 F.3d 388, 389 (D.C. Cir. 1998).) The "adequate margin of safety" requirement ensures the NAAQS will "protect against effects which have not yet been uncovered by research and effects whose medical significance is a matter of disagreement." *Lead Indus. Ass'n v. EPA*, 647 F.2d 1130, 1154 (D.C. Cir. 1980).

31. EPA may revise NAAQS "in the same manner as promulgated." 42 U.S.C. § 7409(b). And EPA is required to review—and if appropriate revise—the NAAQS, and the underlying criteria on which they are based, at least every five years. *Id*. § 7409(d)(1).

32. Within two years of EPA promulgating a NAAQS, it must designate each area of the country as "nonattainment," "attainment,' or "unclassifiable." 42 U.S.C. § 7407(d)(1)(A)-(B).

8

33. "Nonattainment" means "any area that does not meet (or that contributes to ambient air quality in a nearby area that does not meet) the national primary or secondary ambient air quality standard for the pollutant." 42 U.S.C. § 7407(d)(1)(A). "Attainment" means "any area (other than an area identified as ["nonattainment"]) that meets the national primary or secondary ambient air quality standard for the pollutant." *Id.* And "unclassifiable" means "any area that cannot be classified on the basis of available information as meeting or not meeting the national primary or secondary ambient air quality standard for the pollutant." *Id*.

34. EPA "shall promulgate" these designations via notice in the Federal Register "as expeditiously as practicable, but in no case later than 2 years from the date of promulgation of the new or revised [NAAQS]." 42 U.S.C. § 7407(d)(1)(B), (d)(2)(A). The deadline to issue the designations may be extended by up to one year "in the event the Administrator has insufficient information to promulgate the designations." *Id*. § 7407(d)(1)(B)(i).

35. Before EPA makes its designations, states have the opportunity to recommend designations for areas within their jurisdiction. 42 U.S.C. § 7407(d)(1)(A). Typically, these proposed designations must be submitted to EPA no later than one year after the promulgation of a new or revised NAAQS. *Id.* EPA may modify a state's proposed area designations as it "deems necessary," but must notify the state "no later than 120 days before the date the Administrator promulgates the designation" and "shall . . . provide such State with an opportunity to demonstrate why any proposed modification is inappropriate." *Id.* § 7407(d)(1)(B)(ii). If a state fails to submit a list of proposed area designations in whole or in part, EPA "shall promulgate the designation that the Administrator deems appropriate for any area (or portion thereof) not designated by the State." *Id*. In other words, a state's failure to submit proposed area designations does not relieve EPA of its duty to promulgate designations via Federal Register notice within two years of the date of promulgation of a NAAQS.

36. States and local governments have the "primary responsibility for assuring air quality" within its borders "by submitting an implementation plan . . . which will specify the manner in which" the NAAQS "will be achieved and maintained" within the state. 42 U.S.C. § 7407(a); *see also id.* § 7401(a)(3). State implementation plans are collections of regulations and

9

documents that "provide[] for implementation, maintenance, and enforcement" of a NAAQS. *Id*. § 7410(a)(1). EPA's designations determine the type(s) of state implementation plans that states must submit to EPA for approval.

37. All states must submit infrastructure state implementation plans, which describe the authorities, resources, and programs that states have in place to implement, maintain, and enforce the NAAQS. 42 U.S.C. § 7410(a). These plans must include, for example, provisions "prohibiting . . . any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will[] . . . contribute significantly to nonattainment in, or interfere with maintenance by, any other State." *Id*. § 7410(a)(2)(D)(i). Infrastructure plans must also provide for a permit program implementing the Clean Air Act's program for "prevention of significant deterioration." *Id*. § 7410(a)(2)(J). These plans must be submitted to EPA within three years of the promulgation of a new or revised NAAQS.

38. States with areas designated "nonattainment" for a NAAQS must also submit nonattainment plans, which are more rigorous. 42 U.S.C. §§ 7502, 7513-13b.[1] For example, states with nonattainment areas deemed "moderate"[2] severity must submit nonattainment plans that include provisions for a permit program for the construction and operation of new and modified major stationary sources of particulate matter, provisions to assure that "reasonably available control measures" for particulate matter are implemented, and a demonstration that the plan provides for attainment of the area by the applicable date. *Id*. § 7513a(a)(1). In addition to the above requirements, nonattainment plans for states with nonattainment areas deemed "serious" must include provisions to assure the "best available control measures" are implemented no later than four years after an area is classified as "serious." *Id*. § 7513a(b)(1). States must submit nonattainment plans to EPA within 18 months after a nonattainment designation. *Id*. § 7513a(a)(2)(B), (b)(2)(B).

---

[1] 42 U.S.C. §§ 7513-13b discusses nonattainment plans for $PM_{10}$. These provisions also govern $PM_{2.5}$, which is a subset of $PM_{10}$. *Natural Res. Def. Council v. EPA*, 706 F.3d 428, 435 (D.C. Cir. 2013).

[2] All nonattainment areas for particulate matter are initially classified as "moderate." 42 U.S.C § 7513(a).

10

39.     EPA's promulgation of designations does more than just impose obligations. It also supports state and local efforts to address air pollution in numerous ways. For some states, the designations are necessary to trigger authority under state law to develop pollution-control plans to attain the NAAQS. And for all states, once state implementation plans are approved by EPA, their provisions have "the force and effect of federal law," and are enforceable via citizen suits against polluters and local agencies in federal court. *Trustees for Alaska v. Fink*, 17 F.3d 1209, 1210 n.3 (9th Cir. 1994); *see also* 42 U.S.C. §§ 7604(a)(1), (f)(3). Those provisions become binding on federal agencies, which are statutorily required to ensure their actions "conform" to a state implementation plan's provisions and its purpose. 42 U.S.C. § 7506. In addition, states with nonattainment designations gain eligibility for federal grant funds that support state pollution reduction programs. 23 U.S.C. § 149(b), 42 U.S.C. § 7505.

40.     EPA's promulgation of designations also protects states against air pollution from outside their borders. Nonattainment designations in upwind states require reductions in emissions, in turn reducing the amount of pollution that affects downwind states. And downwind states are entitled to emissions reductions in upwind states to the extent necessary to prevent pollution that contributes significantly to their nonattainment or interferes with their ability to maintain the standard. 42 U.S.C. § 7410(a)(2)(D). Downwind states are also entitled to additional limits on specific major sources of pollution in upwind states. *Id*. § 7426. Emissions reductions in upwind states designated nonattainment benefit downwind states.

41.     All of these protections are locked in by the Clean Air Act's anti-backsliding provision, even if a NAAQS is later weakened. 42 U.S.C. § 7502(e) (requiring EPA, upon relaxation of a NAAQS, to promulgate requirements for nonattainment areas that "shall provide for controls which are not less stringent than the controls applicable to areas designated nonattainment before such relaxation"). As EPA has recognized, this anti-backsliding provision is triggered at the latest once nonattainment designations are promulgated. Respondent's Motion for Vacatur at 6, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2147050.

42.     EPA's promulgation of designations is thus a crucial step in implementing a NAAQS and providing states and local governments with the tools they need to fulfill their obligations and realize the benefits of a stronger standard.

## STATEMENT OF FACTS

### A.     FINE PARTICULATE MATTER POLLUTION

43.     Particulate matter refers to a mixture of substances suspended in the air as solid particles and/or liquid droplets. *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 16,202, 16,213 (Mar. 6, 2024). It can be emitted directly into the atmosphere from a source, such as construction sites, smokestacks, and wildfires; or it can form in the atmosphere as a result of complex reactions of chemicals, such as sulfur dioxide and nitrogen oxides, which are pollutants emitted from power plants, industries, and vehicles. *Id*. at 16,213-14.

44.     Some particles are large or dark enough to see with the naked eye (e.g. dust, dirt, soot, smoke), while others can only be detected using an electron microscope. For regulatory purposes, particles are categorized by their size: those with a diameter of 10 microns or less (known as $PM_{10}$) and those with a diameter of 2.5 microns or less (known as $PM_{2.5}$).  89 Fed. Reg. at 16,213-14.

45.     The size of the particulate matter is directly linked to its potential for causing health problems, with smaller particles posing the greatest risks. 89 Fed. Reg.at 16,212-13; EPA Brief, p. 8, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2070774. Exposure to $PM_{2.5}$ poses significant health risks, because it can travel deep into the lungs and even into the bloodstream. *Id*.

46.     For example, $PM_{2.5}$ exposure has been linked to premature death in people with heart or lung disease, nonfatal heart attacks, irregular heartbeat, aggravated asthma, decreased lung function, and increased respiratory symptoms, among other health impacts. EPA Brief, p. 8-9, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2070774 (citing 2019 Science Assessment at ES-12—ES-17).

47. The effects of $PM_{2.5}$ grow worse with higher concentrations and with repeated exposure. There is "strong evidence" that Black and Hispanic populations are exposed to higher $PM_{2.5}$ concentrations than non-Hispanic White populations; and evidence also indicates that populations with lower socioeconomic status are exposed to higher concentrations of $PM_{2.5}$ than those with higher socioeconomic status. 89 Fed. Reg. at 16,204.

**B.      FAILURE OF DEFENDANTS TO PROMULGATE NONATTAINMENT DESIGNATIONS**

48. On February 7, 2024, EPA revised its $PM_{2.5}$ NAAQS, promulgating a strengthened primary annual[3] standard that was published in the Federal Register on March 6, 2024. *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 16,202 (March 6, 2024), codified at 40 C.F.R. § 50.20 (2024 $PM_{2.5}$ NAAQS). EPA's promulgation of the standard lowered the allowable concentration of $PM_{2.5}$ in the air from 12 $\mu g/m^3$ to 9 $\mu g/m^3$. *Id*. at 16,202. EPA explained that the available scientific evidence and technical information indicated that the prior primary annual $PM_{2.5}$ NAAQS was not adequate to protect public health with an adequate margin of safety, *id*. at 16,204, 16,273-86, and that the evidence showed statistically significant associations between health effects and $PM_{2.5}$ concentrations well below 12 $\mu g/m^3$, *id*. at 16,274. *See* EPA Brief, p. 21-22, *Kentucky v. EPA*, No. 24-1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2070774.

49. Pursuant to Clean Air Act Section 107(d)(1)(B), 42 U.S.C. § 7407(d)(1)(B), EPA was thereafter required to promulgate area designations for the 2024 $PM_{2.5}$ NAAQS for all areas by no later than February 7, 2026.

50. On March 6, 2024, several groups of petitioners, including states and industry groups, filed litigation challenging the 2024 $PM_{2.5}$ NAAQS in the United States Court of Appeals for the District of Columbia Circuit. EPA defended the 2024 $PM_{2.5}$ NAAQS through merits briefing and a hearing before the D.C. Circuit. On November 24, 2025, EPA changed its position and requested that the D.C. Circuit "vacate the [2024 $PM_{2.5}$ NAAQS] before the area designation deadline of February 7, 2026." Respondents' Motion for Vacatur at 1, *Kentucky v. EPA*, No. 24-

---

[3] There are two federal primary standards for $PM_{2.5}$—an annual average standard and a 24-hour average standard. This case is about the primary annual average standards. *See supra* ¶ 20 (explaining primary versus secondary standards).

1050 (D.C. Cir., argued Dec. 16, 2024), ECF No. 2147050. However, the D.C. Circuit has not granted EPA's motion to vacate, meaning that the standards are still in place as is EPA's nondiscretionary statutory duty to promulgate the designations via a notice in the Federal Register by February 7, 2026.

51.     To date, EPA has not promulgated any area designations for the 2024 $PM_{2.5}$ NAAQS.

52.   However, since June 2025, EPA has had sufficient information to promulgate the designations. In a guidance memo sent to states the day that EPA promulgated the 2024 $PM_{2.5}$ NAAQS, EPA stated that it expected to rely on air quality data from 2022-2024 in making final designations. Memorandum on Initial Area Designations for the 2024 Revised Primary Annual Fine Particle National Ambient Air Quality Standard, from Joseph Goffman, Ass't Adm'r, to Reg'l Adm'rs, at 3 (Feb. 7, 2024), https://www.epa.gov/system/files/documents/2024-02/pm-naaqs-designations-memo_2.7.2024-_-jg-signed.pdf (Designation Memo). The data from 2024 was published by EPA in June 2025. *Id*., Att. 1; EPA, Air Quality Design Values, https://www.epa.gov/air-trends/air-quality-design-values. Moreover, forty-five states, the District of Columbia, Puerto Rico, the Virgin Islands, and three Tribes submitted recommended designations to EPA. *See* Earthjustice, *Assessing 2024 PM2.5 Standard Implementation So Far: Who's on Track to Get Clean Air and Who's Left Behind* 7-8 (Nov. 2025), https://earthjustice.org/wp-content/uploads/2025/12/ej_pm2.5-whitepaper_final_v5.pdf.

53.     EPA's failure to timely promulgate area designations delays the public health protections that the 2024 $PM_{2.5}$ NAAQS were promulgated to achieve. The lack of final designations means that state and local regulators do not know the attainment deadlines and the boundaries of any new nonattainment areas, which stalls the development of control strategies and the emissions reductions they are intended to achieve. The delay also deprives State and Local Government Plaintiffs of important regulatory tools that Congress provided to them to combat fine particulate matter pollution, such as the ability to enforce the more protective standards in federal court. *Trustees for Alaska*, 17 F.3d at 1209 n.3, 42 U.S.C. § 7604(a)(1), (f)(3). The delay burdens states with health care expenses imposed as a result of fine particulate

14

matter and precursor emissions in upwind states, and it creates uncertainty for states that need a nonattainment designation in order to determine their next steps for Clean Air Act compliance. It also delays anti-backsliding protections for nonattainment areas, and it prolongs the exposure of millions of people to unhealthy air.

54. EPA's failure to promulgate designations thus impairs State and Local Government Plaintiffs' role as the "primary" entities with responsibility for air pollution prevention and control at its source, 42 U.S.C. § 7401(a)(3), and thwarts one of the Clean Air Act's fundamental purposes to "protect and enhance the quality of the Nation's air resources so as to promote the public health," *id*. § 7401(b)(1).

**C.    NOTICE OF VIOLATION**

55. On February 17, 2026 and April 16, 2026, State and Local Government Plaintiffs sent Notices of Intent to Sue (NOIs) to EPA by certified mail. Exhibit 1; Exhibit 2. The NOIs explained that EPA's failure to issue designations constitutes a violation of its nondiscretionary duty to promulgate timely designations for the 2024 $PM_{2.5}$ NAAQS via publication of a notice in the Federal Register. *Id.*; *see* 42 U.S.C. § 7407(d)(1)(B), (d)(2)(A). The NOIs notified EPA of State and Local Government Plaintiffs' intention to commence a lawsuit if EPA did not correct its violation within 60 days. *Id*.

56. More than 60 days have passed since the State and Local Government Plaintiffs gave notice to EPA, 42 U.S.C. § 7604(b)(2), and EPA has not issued designations for the 2024 $PM_{2.5}$ NAAQS.

**FIRST CAUSE OF ACTION**

**(Failure to Perform a Nondiscretionary Duty to Promulgate
Area Designations via Federal Register Notice for the 2024 $PM_{2.5}$ NAAQS)**

57. State and Local Government Plaintiffs reallege and incorporate by reference the preceding paragraphs in their entirety.

58. As set forth above, EPA has a nondiscretionary duty to promulgate timely area designations for the 2024 $PM_{2.5}$ NAAQS via publication of a notice in the Federal Register by no later than February 7, 2026. 42 U.S.C. § 7407(d)(1)(B) (requiring EPA to "promulgate the

15

designations of all areas . . . as expeditiously as practicable, but in no case later than 2 years from the date of promulgation of the new or revised [NAAQS]"), (d)(2)(A) (requiring EPA to "publish a notice in the Federal Register promulgating any designation").

59.    EPA's failure to promulgate area designations for the 2024 $PM_{2.5}$ NAAQS is a violation of Section 107(d)(1)(B) of the Clean Air Act. *Id.* § 7407(d)(1)(B). To this day, EPA has still not issued the area designations for the 2024 $PM_{2.5}$ NAAQS.

60.    This ongoing violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" under Section 304(a)(2) of the Clean Air Act. *Id.* § 7604(a)(2).

61.    EPA's failure to perform this nondiscretionary duty has harmed and continues to harm the State and Local Government Plaintiffs by depriving our jurisdictions of important regulatory tools for combatting fine particulate matter, and by impairing our ability to prevent health harms—including avoidable premature deaths and increased mortality—to our residents that result in healthcare and administrative costs that we must shoulder. EPA's failure delays the implementation of a more protective fine particulate matter standard that will lead to cleaner, healthier air within our borders.

## **RELIEF**

**WHEREFORE**, State and Local Government Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

A.    Declare that Defendant is in violation of Section 107(d)(1)(B) of the Clean Air Act, 42 U.S.C. § 7607(d)(1)(B), for failing to promulgate designations for the 2024 $PM_{2.5}$ NAAQS via publication of a notice in the Federal Register by the statutory deadline of February 7, 2026;

B.    Order Defendant to perform his mandatory duty to promulgate designations for all areas of the country within 150 days of this Court's order;

C.    Award State and Local Government Plaintiffs the costs of the litigation, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 7604(d);

16

First Amended Complaint for Declaratory and Injunctive Relief (4:26-cv-03500-HSG)

D.    Retain jurisdiction over this matter until such time as Defendant has fully complied with his nondiscretionary duty to promulgate all area designations for the 2024 PM$_{2.5}$ NAAQS via publication of a notice in the Federal Register; and

E.    Such other relief as the Court deems just and proper.

Dated: June 23, 2026                                Respectfully submitted,

**FOR THE STATE OF CALIFORNIA**
ROB BONTA
ATTORNEY GENERAL

MYUNG J. PARK
CHRISTIE VOSBURG
Supervising Deputy Attorneys General
JONATHAN A. WIENER
STACY J. LAU
Deputy Attorneys General

*/s/ Micaela M. Harms*
MICAELA M. HARMS
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3743
Micaela.Harms@doj.ca.gov

*Attorneys for Plaintiff State of California by and through Attorney General Rob Bonta and the California Air Resources Board*

**FOR THE STATE OF HAWAI'I**
ANNE E. LOPEZ
ATTORNEY GENERAL

MELISSA J. KOLONIE
Supervising Deputy Attorney General

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 South King Street, Room 200
Honolulu, HI 96813
(808) 587-3050
Lyle.t.leonard@hawaii.gov

**FOR THE STATE OF CONNECTICUT**
WILLIAM TONG
ATTORNEY GENERAL

*/s/ Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

**FOR THE STATE OF MARYLAND**
ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-641
sgoldstein@oag.maryland.gov

*\*Application for admission pro hac vice forthcoming*

17

**FOR THE COMMONWEALTH OF MASSACHUSETTS**
ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Marcus Holmes*
MARCUS HOLMES
Assistant Attorney General & Director of Environmental Justice
Environmental Protection Division
BRIAN CLAPPER
Assistant Attorney General
Environmental Protection Division
TURNER SMITH
Assistant Attorney General & Deputy Bureau Chief
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
Marcus.D.Holmes@mass.gov
Brian.Clappier@mass.gov
Turner.Smith@mass.gov

**FOR THE STATE OF MINNESOTA**
KEITH ELLISON
ATTORNEY GENERAL

*/s/ Cat Rios-Keating*
CAT RIOS-KEATING
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-7302
Catherine.Rios-Keating@ag.state.mn.us

**FOR THE STATE OF NEW YORK**
LETITIA JAMES
ATTORNEY GENERAL

*/s/ Nicholas C. Buttino*
NICHOLAS C. BUTTINO
Assistant Attorney General
New York Attorney General's Office
State Capitol
Albany, NY 12224
518-776-2406
Nicholas.Buttino@ag.ny.gov

**FOR THE STATE OF OREGON**
DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge, Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

**FOR THE STATE OF RHODE ISLAND**
PETER F. NERONHA
ATTORNEY GENERAL

/s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ
Assistant Attorney General
Environmental & Energy Unit Chief
150 South Main Street
Providence, RI 02903
(401) 274-4400
nvaz@riag.ri.gov

**FOR THE STATE OF VERMONT**
CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Melanie Kehne*
MELANIE KEHNE
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
melanie.kehne@vermont.gov

*\*Application for admission pro hac vice forthcoming*

18

First Amended Complaint for Declaratory and Injunctive Relief (4:26-cv-03500-HSG)

**FOR THE STATE OF WISCONSIN**
JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/ Bradley J. Motl*
BRADLEY J. MOTL
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857
(608) 267-0505
bradley.motl@wisdoj.gov

**FOR THE DISTRICT OF COLUMBIA**
BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Coty Montag*
COTY MONTAG
Deputy Attorney General
LAUREN CULLUM
Special Assistant Attorney General
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
coty.montag@dc.gov
lauren.cullum@dc.gov

**FOR HARRIS COUNTY, TEXAS**
JONATHAN G.C. FOMBONNE
COUNTY ATTORNEY

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
Managing Counsel
Affirmative and Environmental Divisions
ELIZABETH HIDALGO
Assistant County Attorney
Environmental Division
Harris County Attorney's Office
1010 Lamar, 11th Floor
Houston, Texas 77002
(832) 596-9786
Sarah.Utley@harriscountytx.gov
Elizabeth.Hidalgo@harriscountytx.gov

**FOR THE CITY OF NEW YORK**
STEVEN BANKS
CORPORATION COUNSEL

*/s/ Nathan Taylor*
NATHAN TAYLOR
Assistant Corporation Counsel
New York City Law Department
100 Church St.
New York, New York, 10007
Tel. 212-356-2315
ntaylor@law.nyc.gov

In compliance with Civil Local Rule 5-1(i)(3), I, as the filer of this document, attest that all other signatories have concurred in the filing of this document.

*/s/ Micaela Harms*
Micaela M. Harms
Counsel for Plaintiff State of California

19

First Amended Complaint for Declaratory and Injunctive Relief (4:26-cv-03500-HSG)